UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICIA ARROYO AND JUSTIN ASHER | CIVIL ACTION |
| VERSUS | NO. 18-5716 |
| TRAVELERS INDEMNITY CO. OF CONNECTICUT, LOAD 1 LLC, AND JAMES SHARP | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is defendants' motion for summary judgment.[1] Because an issue of material fact exists, the Court denies the motion.

## I. BACKGROUND

This dispute arises from a vehicular accident at the intersection of Tchoupitoulas Street and Calliope Street. Plaintiffs' version of the accident is as follows. Plaintiffs were travelling northbound on Tchoupitoulas Street in a Honda operated by plaintiff Patricia Arroyo and also occupied by plaintiff Justin Asher.[2] Arroyo was initially in the right lane, but wanted to

---

[1] R. Doc. 48.
[2] R. Doc. 1-4 at 2 ¶ 3.

enter the left lane in order to access the interstate.[3] She testified that there was space between defendant James Sharp's tractor-trailer and the car in front of him in the left lane, so she entered the left lane in front of him nearly all the way in order to get on the interstate.[4] After turning into the left lane, Arroyo testified that the vehicles were stopped at a red light for "more than ten seconds."[5] Arroyo claims that once the light turned green, Sharp accelerated and hit her.[6]

Defendants tell an entirely different story. They claim that only after Sharp began to proceed forward did Arroyo begin to move into the left lane, and that she collided with Sharp's tractor-trailer.[7] Defendants therefore maintain that Arroyo alone is responsible for the accident.

Plaintiffs sued Sharp, his employer Load One LLC, and Load One's insurer, Travelers Indemnity Company.[8] Defendants move for summary judgment on plaintiffs' claims.

---

[3] *See id.*; R. Doc. 48-2 at 6, p. 18:19-23.
[4] *See* R. Doc. 48-2 at 6, p. 18:19-23.
[5] R. Doc. 48-2 at 7, p. 23:9-10.
[6] *Id.* at p. 24:8-12; *see also* R. Doc. 1-4 at 2 ¶ 3.
[7] *See* R. Doc. 48-1 at 2.
[8] *See generally* R. Doc. 1-4.

2

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III. DISCUSSION

Defendants' argue that they are entitled to summary judgment because at the time of the accident, Arroyo was changing lanes, and thus she owed a duty of utmost care to ensure the lane change was safe. Defendants maintain Arroyo did not exercise such care in making the lane change, and therefore her claims are barred.

Louisiana law creates an elevated duty of care for drivers changing lanes. Louisiana traffic regulations state that a "vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." La. R. S. 32:79(1). Therefore "when there is a change of lanes by a motorist immediately preceding an accident, the burden of proof is on the motorist changing lanes to show that it was first ascertained that the movement could be made safely." *Brewer v. J.B. Hunt Trans., Inc.*, 35 So.3d 230, 243 (La. 2010); *see also Farrell v. Fireman's Fund Ins. Co.*,

650 So. 2d 742, 746 (La. 1995) (holding that "the burden of proof on [a] motorist is to show that he was not guilty of any dereliction, however slight").

A review of the record shows that an issue of material fact exists as to whether Arroyo breached her duty to ascertain that the lane change could be made safely. She asserts in her deposition that she nearly completed the lane change before the light turned green, as her car was mostly in the left lane "a little bit before the gas tank."[9] Moreover, she claims that once she had entered the left lane, traffic was stopped for what she believes was "more than ten seconds."[10] This indicates that she was able to virtually complete the lane change and remain safely stopped in traffic at a red light for a number of seconds. This testimony is bolstered by the deposition testimony of plaintiff Asher, who stated that before the light turned green, Arroyo had turned her car in front of Sharp's eighteen-wheeler.[11] Arroyo's statement that she pulled almost entirely into the left lane while the light was red, and remained stopped there for over ten seconds, indicates that she took steps to "first ascertain[] that such movement can be made with safety." La. R. S. 32:79(1).

---

[9] R. Doc. 48-2 at 6-7, p. 20:25-p. 21:1.
[10] *Id.* at 7, p. 23:6-10.
[11] *See* R. Doc. 48-3 at 6, p. 18:5-9 ("Q: Okay, and so what I hear from you is before the light turned green, Patricia moved and made—turned the vehicle in front of the 18-wheeler? A: Yes, sir.").

6

To counter this, defendants point to one portion of Arroyo's deposition in which defendants' counsel asked: "Did you see or make eye contact with Mr. Sharp either before or after you entered the lane, but before the light turned green?"[12] Arroyo responded: "No. I don't think so."[13] Defendants argue this response is dispositive of the matter, as it demonstrates Arroyo did not take proper care in her lane change. But that Arroyo did not "see or make eye contact" with Mr. Sharp does not mean that she did not ascertain that her lane change could be made safely, or even "was guilty of any dereliction, however slight." *Farrell*, 650 So. 2d at 746. Not all drivers who make lane changes are required to physically see the other driver (as opposed to his vehicle) or to lock eyes with him to change lanes safely. Here, for example, Arroyo claims she was already positioned with the majority of her car in the lane in front of Sharp[14] for several seconds before the light turned green and the collision occurred.[15] She asserts that Sharp was stopped at the red light behind her,[16] which indicates that Arroyo had time to safely enter the lane without physically seeing his person or making eye contact with him.

---

[12]  R. Doc. 48-2 at 7, p. 22:10-13.
[13]  *Id.* at 7, p. 22:14.
[14]  R. Doc. 48-2 at 6-7, p. 20:25-p. 21:1.
[15]  *Id.* at 7, p. 23:6-10; *see also* R. Doc. 48-1 at 2.
[16]  *Id.* at 6, 20:6-8; R. Doc. 48-3 at 6, p. 18:5-12.

The only case plaintiffs have identified that speaks to an obligation to see the other driver or make eye contact is *Elfers v. AIG National Insurance Co.*, 80 So. 3d 585 (La. App. 4 Cir. 2011). In that case, a plaintiff in a lane change case was allocated twenty-percent fault by a jury. She requested a judgment not withstanding the verdict, which the trial court denied. On appeal, she argued the jury wrongfully allocated her any fault. The appeals court rejected this, in part because the plaintiff did not make eye contact with the defendant before proceeding in her lane of travel.

But the facts in *Elfers* are different from the facts here. As an initial matter, due to the procedural posture following the trial, in that case all inferences were being drawn in the opposite direction—*against* the plaintiff, whereas here, all inferences are drawn *in favor* of the nonmovant. *See Galindo v. Precision Am. Corp.*, 754 F.2d at 1216. In *Elfers*, the defendant was performing the lane change while moving down a highway, and purportedly signaled. The plaintiff continued to accelerate in the same lane without making eye-contact to ascertain the defendant's intention after his signal. The appeals court held this was enough to find that it was not improper for a jury to find her twenty percent at fault. Here, plaintiff states she made the lane change while defendant was stopped at a red light, and she remained stopped ahead of Sharp in Sharp's lane for at least ten seconds

before the collision. Unlike in *Elfers*, under plaintiffs' version of events, there was no need to see or make eye contact with Sharp himself to ascertain his intention, given he was stopped at a red light.

In light of plaintiffs' testimony, and drawing all inferences in favor of non-movant, the Court finds a "genuine dispute as to [a] material fact." Fed. R. Civ. P. 56(a). Summary judgment is therefore not appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion for summary judgment.

New Orleans, Louisiana, this __3rd__ day of March, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE